IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| George Egan and Diane Egan, | Case No. 3:15-cv-03533-DCC |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| United States of America | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment on Standard of Care and Causation. ECF No. 54. Defendant filed a Response in Opposition, ECF No. 61, and Plaintiffs filed a Reply, ECF No. 62. Accordingly, the Motion is ripe for consideration.

## **BACKGROUND**

Plaintiffs filed a medical malpractice action against Defendant pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. ECF No. 1. Plaintiffs' Complaint alleges that Plaintiff George Egan ("Mr. Egan") received medical care at the William Jennings Bryan Dorn Veterans Administration Medical Center in Columbia, South Carolina ("VAMC") for a back injury received during the Vietnam War. *Id.* at 1–3. In October 2010, Mr. Egan's primary care physician at the VAMC ordered an MRI of the lumbar spine, which showed a severe disc extrusion that was causing compression of various nerves. *Id.* at 3. Mr. Egan was then evaluated and treated by a number of VAMC medical providers for worsening back pain and eventual neurological deficits. In April 2012, a neurosurgery nurse practitioner on staff at the VAMC diagnosed Mr. Egan with cauda equine syndrome. *Id.* at 22. Immediately after this diagnosis, Mr. Egan underwent decompression surgery at a non-VA hospital. *Id.* This surgery was not successful in restoring Mr.

1

Egan's neurological strength or function below his waist. *Id.* Mr. Egan now alleges that this delay in diagnosis and treatment caused his permanent neurological issues.

Plaintiffs disclosed ten retained experts[1] and served the applicable expert reports on Defendant. ECF No. 31. Defendant filed an expert disclosure, stating as follows:

> The United States names the following expert medical providers pursuant to Rule 26(a)(2)(C). These providers will testify as to their treatment of Mr. George Egan. These witnesses are not required to provide a written report:
>
> (1) Dr. Jeswinder Chauhan, Dr. Jay Ginsburg, Dr. Richard Killingsworth, Dr. Amy Lucus, Dr. Emett Maas, Dr. James McCallum, Dr. Richard Osborne, Dr. Amit Singh, Dr. John Steedman, Dr. Joseph Thompson, Dr. Yedatore Venkatesh, all providers at Dorn Veteran Affairs Memorial Center.
> (2) Health care providers at Augusta Veteran Affairs Memorial Center.
> (3) All other health care providers of George Egan.

ECF No. 34. Believing these expert disclosures to be deficient, Plaintiffs filed a Motion to Exclude Defendant from Offering Expert Testimony. ECF No. 40. The Court held that Defendant's expert disclosures were insufficient under Federal Rule of Civil Procedure 26(a)(2)(A) and (C) as well as the Fourth Amended Scheduling Order because Defendant did not adequately identify its proposed experts and did not disclose "a summary of the facts and opinions to which the witness is expected to testify." ECF No. 48 at 6 (quoting Fed. R. Civ. P. 26(a)(2)(C)). However, the Court held that "these insufficiencies do not warrant the sanction of dismissal and can be cured." *Id.* Thus, the Court limited Defendant to calling at trial those experts specifically named in the expert disclosure and directed Defendant to cure the deficiencies in its disclosures within twenty days. *Id.* at 9. On the twentieth day after the Court's order, Defendant filed "Defendant's Court Ordered Response Pursuant to Rule 26(a)(2)(C)." ECF No. 49. This disclosure includes the names, addresses, and phone numbers for each of the treating physicians previously designated by Defendant. *Id.*

---

[1] Plaintiffs disclosed nine retained medical experts as well as an economist. ECF No. 31. Additionally, Plaintiffs disclosed one non-retained expert—a VAMC physician. *Id.*

Additionally, the disclosure includes a short description of each physician's involvement in Plaintiff's treatment. *Id.*

Thereafter, Plaintiffs filed a Motion for Partial Summary Judgment on Standard of Care and Causation. ECF No. 54. Plaintiffs argue that, "[i]f Defendant intended for the Dorn VAMC providers to contend that the standard of care is different than what Plaintiffs' experts have established it to be, that they otherwise complied with the standard of care, or that no violation of the standard of care harmed Mr. Egan, then Defendant was required to provide the statements and summaries required by Fed.R.Civ.P. 26(a)(2)(C)." ECF No. 55 at 23. Plaintiffs include an extensive factual recitation in support of their Motion, ECF No. 55, and include substantial documentary support by way of affidavits, medical records, and deposition testimony. *See* ECF Nos. 55-1–55-13. Defendant filed a Response in Opposition in which it argues that its amended expert disclosures were sufficient, and contends that Rule 26(a)(2)(C) contains no requirement that Defendant provide Plaintiffs with any information about its non-retained experts' opinions. ECF No. 61. Additionally, Defendant references several short excerpts of deposition testimony, which it contends create genuine issues of material fact. *Id.* at 8–10. In Reply, Plaintiffs argue that, irrespective of the sufficiency of Defendant's amended disclosures, Defendant has failed to adduce any evidence to rebut Plaintiffs' experts' opinions on standard of care or causation. ECF No. 62.

## **SUMMARY JUDGMENT STANDARD**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. To that end, "Rule 56 states

"[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

4

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

### I. Elements of Negligence

"A plaintiff has a cause of action against the government under the FTCA if he also would have a cause of action under state law against a private person under like circumstances." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 815 (D.S.C. June 5, 2014) (citing 28 U.S.C. § 1346(b); *Corrigan v. United States*, 815 F.2d 954, 955 (4th Cir. 1987)). "In this case, South Carolina law of medical malpractice applies." *Id.*

> To establish liability in a medical malpractice case, a plaintiff must prove by a preponderance of the evidence:
>
> (1) The generally accepted standards, practices and procedures in the community that would be exercised by competent physicians in the same field under similar circumstances;
>
> (2) That the physicians or medical personnel in question negligently deviated from the generally accepted standards, practices, and procedures;
>
> (3) That the negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (4) That the plaintiff was injured.

5

*Id.* (citing *Dumont v. United States*, 80 F. Supp. 2d 576, 581 (D.S.C. 2000). "Furthermore, the plaintiff 'must establish by expert testimony both the standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct.'" *Id.* (quoting *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795 (S.C. Ct. App. 2005)). "Proof of proximate cause must also be established by expert testimony where either the origin of the injury is obscure and not readily apparent to a layperson or where there are several equally probable causes of the condition." *Carver Med. Soc'y of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct. App. 1985) (citing *Welch v. Whitaker*, 317 S.E.2d 758, 763 (S.C. Ct. App. 1984)). "When expert testimony is not relied upon to establish proximate cause, the plaintiff must offer evidence that 'rises above mere speculation or conjecture.'" *Id.* (quoting *Armstrong v. Weiland*, 225 S.E.2d 851, 853 (S.C. 1976); *Carter v. Anderson Mem'l Hosp.*, 325 S.E.2d 78, 81 (S.C. Ct. App. 1985)).

Here, Plaintiffs ask the Court to grant partial summary judgment on the issues of standard of care, breach, and causation.[2] As detailed below, the Court grants Plaintiffs' motion, and this matter will proceed to a bench trial on the issue of damages.

**A. Plaintiffs' Evidence**

Plaintiffs have submitted expert reports and affidavits from four medical experts: Dr. Kaveh Khajavi, a board certified neurosurgeon; Dr. Barry Ludwig, a board certified neurologist;

---

[2] Plaintiffs' Motion is captioned as a Motion for Partial Summary Judgment on Standard of Care and Causation. However, a review of the filing clearly indicates that Plaintiffs are requesting summary judgment on the issues of standard of care, breach, and causation. *See, e.g.* ECF No. 55 at 4 ("Plaintiffs are entitled to summary judgment because their experts have established the applicable standard of care, violations of the standard of care, and harm caused by the violations of the standard of care.").

Dr. Don F. Mills, a board certified anesthesiologist; and Dr. Theresa Cuoco, a board certified internist. ECF Nos. 55-1–55-4. A brief summary of each expert's testimony follows.

Dr. Khajavi's expert opinion relates primarily to the issue of causation. "More specifically, [his] opinion focus[es] on how the failure of various medical providers at the [VAMC] to refer Mr. Egan to a spine surgeon for more than eighteen months after a MRI showed severe compression of his cauda equine nerve roots by a large disc extrusion rendered Mr. Egan essentially unable to walk without assistive devices and bowel and bladder incontinent."[3] ECF No. 55-1 at 3.

Dr. Ludwig's expert opinion relates to the issues of standard of care, breach, and causation. To that end, Dr. Ludwig opines that "various providers at the [VAMC] allowed a large disc extrusion in Mr. Egan's lumbar spine to severely compress his cauda equine nerve roots for a prolonged period of time." ECF No. 55-2 at 3. Dr. Ludwig further opines that this "outcome was preventable and occurred because various [VAMC] medical providers violated the standard of care by failing to refer Mr. Egan to a spine surgeon until it was too late." *Id.*

Dr. Mills' expert opinion "primarily focus[es] on various deviations from the applicable standard of care that were committed by pain management physicians at the [VAMC] that resulted in Mr. Egan developing cauda equine syndrome and neurologic deficits." ECF No. 55-3 at 3. "More specifically, [his] opinions primarily focus on how the pain management physicians violated the standard of care by failing to properly address a large disc extrusion that severely compressed Mr. Egan's cauda equine nerve roots at L2-L3." *Id.*

---

[3] Plaintiffs have also submitted an affidavit from Mr. Egan, which states that Mr. Egan would have gone to see a spine surgeon as quickly as possible if he had been referred to one by any of his medical providers. ECF No. 55-8 at 2–3. Additionally, the affidavit states that Mr. Egan would have undergone spine surgery if a spine surgeon had recommended the procedure. *Id.* at 3.

7

Finally, Dr. Cuoco's expert opinions "primarily focus on how three hospitalists and an internist at the [VAMC] violated the standard of care by failing to properly refer Mr. Egan to a spine surgeon and otherwise address a large disc extrusion that severely compressed his cauda equine nerve roots at L2-L3." ECF No. 55-4 at 3.

**B. Defendant's Evidence**

Defendant has submitted short deposition excerpts from the following witnesses: Dr. Amy Lucas, Dr. Jaswinder Chauhan; Dr. Emmet Maas, Dr. James McCallum; Dr. John Steedman, and Dr. Joseph Thompson. ECF Nos. 61-1–61-6. A short summary of each witness's testimony follows.[4]

Dr. Amy Lucas is a physician who continued Mr. Egan on a number of medications, including cyclobenzaprine, meloxicam, and gabapentin. ECF No. 61-1 at 3. Dr. Lucas was asked at her deposition whether the standard of care required her to know the side effect profile of medications that she was prescribing Mr. Egan. *Id.* at 4. Dr. Lucas responded, "[i]f I'm the person initiating them, absolutely. If another doctor has prescribed them, especially a specialist, it's not wise to stop what someone else's started even if you're not as familiar with the side effect profile. I would like to familiarize myself with them though." *Id.*

Dr. Jaswinder Chauhan testified about his "brief encounter" with Mr. Egan. ECF No. 61-2 at 2. Specifically, he testified that Mr. Egan had failed outpatient treatment, which was the basis for his admission to the hospital in order "to make him comfortable." ECF No. 61-2 at 3.

Dr. Emmet Maas was Mr. Egan's primary care physician at the VAMC. ECF No. 1 at 3. Dr. Maas was asked about his physical examination of Mr. Egan. ECF No. 61-3 at 2. During the

---

[4] Defendant has provided the Court with only a few pages of each medical professional's deposition, so the context of each deposition is not entirely clear.

examination, Dr. Maas noted that Mr. Egan suffered from radiating pain when he raised his left leg. *Id.* This indicated possible nerve compression. *Id.* Following this examination, Dr. Maas ordered an MRI to evaluate Mr. Egan's lower spine. *Id.* at 4. Dr. Maas interpreted the MRI report as Mr. Egan experiencing narrowing of the central canal and a large disc extrusion as well as narrowing of the nerve root canals. *Id.* at 5. While Dr. Maas was asked whether he knew what the term "standard of care" meant, *id.* at 3, he offered no testimony about whether he complied with the standard of care. In fact, Dr. Maas acknowledged that it was "a possibility" that Mr. Egan would suffer from nerve damage and permanent neurological deficits. *Id.* at 8.

Dr. James McCallum was an internal medicine resident who was involved in Mr. Egan's care at the VAMC. ECF No. 1 at 14. Dr. McCallum acknowledged that the administration (and subsequent withdrawal) of various medications could have caused Mr. Egan's delirium, though he disputed that it was definitively the cause. ECF No. 61-4 at 2.

Dr. John Steedman was a neurologist employed by the VAMC who supervised Mr. Egan's neurology consultation. ECF No. 1 at 12. He testified that Mr. Egan's increasing back pain, difficulty walking, MRIs showing a disc extrusion, and deficits in lower extremities, strength, reflexes, and sensation "paint[ed] a picture of something chronic being there." ECF No. 61-5 at 2–3. Dr. Steedman was asked if he considered cauda equine syndrome at that time, and he responded that he "considered that there was a condition that had been previously worked up, and [he] believed it was stable." *Id.* at 3. Dr. Steedman then discussed Mr. Egan's delirium and his observation that Mr. Egan was getting better cognitively when he evaluated him. *Id.* at 4.

Dr. Joseph Thompson was an internist at the VAMC who evaluated Mr. Egan prior to his transfer to a rehabilitation facility. ECF No. 1 at 16. He noted that his notes stated that Mr. Egan

9

had "reduced rectal tone" and "very significant compressive changes present at the lumbar cord." ECF No. 61-6 at 2–3.

### C. Discussion

The Court has reviewed the submissions of the parties and the record in this matter, and concludes that Plaintiffs' exhibits thoroughly set forth undisputed evidence as the standard of care, Defendant's breach of the standard of care, and causation. This satisfies Plaintiffs' initial burden under Federal Rule of Civil Procedure 56. The burden then shifts to Defendant to point to specific facts that give rise to a genuine issue of material fact. As discussed below, the Court holds that Defendant has failed to meet this burden.

Defendant has submitted several short deposition excerpts, which it represents are "but a sampling" of the available testimony about standard of care and causation. ECF No. 61 at 8. Defendant further contends that this testimony "is replete regarding the issues of standard of care and causation." *Id.* Defendant also summarily claims that "each of the [physicians], based on their status as treating providers, have indicated that they will also opine as to their treatment being appropriate and devoid of any causation or standard of care shortcomings." ECF No. 61 at 7. Despite these broad proclamations, Defendant has failed to offer any actual evidence as to standard of care, breach, or causation. The submitted deposition testimony discusses Mr. Egan's care generally but does not contain any expert opinion regarding whether Defendant committed medical malpractice. Defendant has not submitted any affidavits from its expert witnesses, nor has it submitted any deposition testimony that rebuts Plaintiffs' experts' opinions. Instead, Defendant simply claims that its experts will opine that their treatment was sufficient at trial. That is insufficient under Federal Rule of Civil Procedure 56.

## II. Defendant's Rule 26(a)(2)(C) Disclosures

Plaintiffs also contend that Defendant's Rule 26(a)(2)(C) disclosures are deficient because they are "devoid of any statement that any of the providers intend to offer evidence about the standard of care or causation." ECF No. 55 at 23. Thus, Plaintiffs argue that Defendant's experts cannot offer any expert opinion on the issue of negligence, and, in the absence of expert testimony, request this Court grant partial summary judgment for the Plaintiffs. As detailed above, the Court's grant of partial summary judgment for the Plaintiffs is based upon the Defendant's failure to offer any evidence that demonstrates the existence of a genuine issue of material fact. For this reason, the Court need not reach the issue of the sufficiency of Defendant's expert disclosures.

However, were the Court to address that issue, it would be inclined to agree with Plaintiffs that Defendant's revised expert disclosures do not provide Plaintiffs with any information regarding what opinions its experts will offer at trial. Instead, Defendant merely provides a brief summary of each witness's recollection of Plaintiff's treatment and a summary of the care provided. However, to be clear, Rule 26(a)(2)(C)(ii) requires disclosure of "a summary of the facts **and opinions** to which the witness is expected to testify." (emphasis added). Nowhere in the disclosures does Defendant summarize any opinions that will be offered by these witnesses. *See* ECF No. 49. The Court previously found Defendant's expert disclosures insufficient for, inter alia, this same reason. Despite the Court's admonition and instructions to cure the deficiencies, ECF No. 48 at 9, Defendant has again failed to provide Plaintiffs with any indication of what opinions its experts will testify to at trial. "The Federal Discovery Rules, by design, are calculated to prevent 'trial by ambush,'" *Bankston v. Kansas City S. Ry. Co.*, No. 03-577-A-M2, 2005 WL 8155221, at *2 n.1 (quoting *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978)), and this

11

Court reminds litigants that Federal Rule of Civil Procedure 37 permits the Court to strike pleadings or exclude experts when a party fails to comply with a Court's discovery orders.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment, ECF No. 54, is **GRANTED**.

IT IS SO ORDERED.

s/Donald C. Coggins, Jr.<br>
United States District Judge

March 13, 2018
Spartanburg, South Carolina