IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| George Egan and Diane Egan, | Case No. 3:15-cv-03533-DCC |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| United States of America, | |
| Defendant. | |

This matter is before the Court on Plaintiffs' Motion in Limine to Exclude Defendant from Presenting Argument or Evidence Regarding Speculative Free Medical Care and Supplies that the Veterans Administration Could Provide in the Future.[1] ECF No. 68. Defendant filed a Response, ECF No. 69, and Plaintiffs filed a Reply, ECF No. 70. Accordingly, the Motion is ripe for consideration.

## **BACKGROUND**

Plaintiffs filed a medical malpractice action against Defendant under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. ECF No. 1. Plaintiffs' Complaint alleges that Plaintiff George Egan ("Mr. Egan") received medical care at the William Jennings Bryan Dorn Veterans Administration Medical Center in Columbia, South Carolina ("VAMC") for a back injury received during the Vietnam War. *Id.* at 1–3. In October 2010, Mr. Egan's primary care physician at the VAMC ordered an MRI of the lumbar spine, which showed a severe disc extrusion causing compression of various

---

[1] Additionally, as detailed below, the parties have asked the Court to clarify whether its prior Order granting partial summary judgment, ECF No. 65, applies to Plaintiffs' gross negligence claims.

1

nerves. *Id.* at 3. Mr. Egan was then evaluated and treated by many VAMC medical providers for worsening back pain and eventual neurological deficits. In April 2012, a neurosurgery nurse practitioner on staff at the VAMC diagnosed Mr. Egan with cauda equine syndrome. *Id.* at 22. Mr. Egan then underwent decompression surgery at a non-VA hospital. *Id.* This surgery was unsuccessful in restoring Mr. Egan's neurological strength or function below his waist. *Id.* Mr. Egan now alleges that this delay in diagnosis and treatment caused his permanent neurological issues.

After the parties submitted expert disclosures, Plaintiffs moved for Partial Summary Judgment as to liability. ECF No. 54. The Court granted Plaintiffs' Motion, finding that "Defendant has failed to offer any actual evidence as to standard of care, breach, or causation." ECF No. 65 at 10. Additionally, the Court noted that "Defendant has again failed to provide Plaintiffs with any indication of what opinions its experts will testify to as trial." *Id.* at 11. The parties later requested a phone conference with the Court to discuss whether the Order also applies to Plaintiffs' allegations of gross negligence. ECF No. 67. Additionally, Plaintiffs' informed the Court that they would be moving to preclude Defendant from offering evidence that Mr. Egan's future medical care could be provided by the Defendant at no cost. *Id.* Plaintiffs then filed a Motion in Limine addressing this issue, which has been fully briefed by the parties and is ripe for this Court's review.

## DISCUSSION

### I. Gross Negligence

First, the Court holds that its prior Order does not apply to Plaintiffs' gross negligence claims. Plaintiffs' Motion for Partial Summary Judgment did not ask the Court

to make a finding on gross negligence, and the issue was not addressed during briefing. Although Plaintiffs' expert affidavits and reports address gross negligence in various degrees of detail, most the relevant opinions are simply recitations of the gross negligence standards. Given the procedural posture of Plaintiffs' Motion and the lack of briefing on the issue, the Court cannot extend its prior Order beyond the issues presented in the Motion. *See* Fed. R. Civ. P. 56(f) (noting that the Court can only grant summary judgment independent of a proper motion when the parties are given notice and a reasonable opportunity to respond). Thus, the parties must address gross negligence at trial so that the Court may determine whether Defendant's conduct satisfies the gross negligence standard. Defendant is reminded that it has failed to properly disclose any expert opinion on liability, including gross negligence. Accordingly, the only question here will be whether the Plaintiffs' evidence meets the applicable legal standard. Defendant is, of course, entitled to cross examine Plaintiffs' experts as well as offer any properly disclosed factual evidence to rebut Plaintiffs' allegations of gross negligence.

## II.  Future Medical Care

Turning to the Motion in Limine, Plaintiffs have asked the Court to preclude Defendant from presenting argument or evidence that the Veterans Administration ("VA") could provide Mr. Egan with free medical care in the future. ECF No. 68. To that end, Plaintiffs contend that both South Carolina law and federal law allow for the recovery of future medical expenses here, and Plaintiffs' offer several federal cases in support of their position. In response, Defendant contends that (1) an offset is permissible because the collateral source rule does not apply in this case; (2) durable medical products should not be considered in calculating damages; and (3) the Court should establish a reversionary

medical trust so that Plaintiffs are not allowed to double recover. As detailed below, the Court finds that the overwhelming weight of authority supports Plaintiffs' argument and grants Plaintiffs' Motion in Limine.

The issue presented to this Court has been addressed by many federal courts. Most recently, the United States Court of Appeals for the Second Circuit addressed the issue in *Malmberg v. United States*, 816 F.3d 185 (2d Cir. 2016). First addressing the applicable federal law, the *Malmberg* Court recognized that "it is axiomatic that the government does not 'pay twice for the same injury.'" 816 F.3d at 190 (quoting *Brooks v. United States*, 337 U.S. 49, 53 (1949)). On the other hand, the Court recognized that it is "particularly unseemly to force a plaintiff to receive medical services from the tortfeasor responsible for his injuries." *Id.* (citing *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1084 (2d Cir. 1988)). These dueling principles seem to be at odds, but the Court recognized that "federal law does not require an offset against a veteran's damages award for future medical care that could be provided at a VA facility." *Id.* at 192. Indeed, "[f]ederal law disfavors an outcome whereby a litigant is 'obligated to seek medical care from the party whose negligence created his need for such care simply because that party offers it without charge.'" *Id.* (citations omitted). The Court recognized that a plaintiff could not recover for *past damages* provided free of charge by the VA but noted no federal authority that would require an injured plaintiff to continue to seek free care simply because it is available.

In response to Plaintiff's reliance on *Malmberg*, the Defendant cites to *Brooks v. United States*, 337 U.S. 49 (1949). In *Brooks*, the Supreme Court of the United States addressed the question of "whether members of the United States armed forces can

4

recover under [the FTCA] for injuries not incident to their service." 337 U.S. at 50. The Supreme Court noted that the accident leading to the lawsuit did not occur incident to the plaintiff's military service and held that recovery under the FTCA was permissible. *Id.* at 52. However, the Supreme Court also noted that "this does not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the [FTCA]. . . . [as] [i]t would seem incongruous, at first glance, if the United States should have to pay in tort for hospital expenses it had already paid, for example." *Id.* at 53–54. This language, however, was dicta and expressed the opinion of the Supreme Court "[w]ithout the benefit of argument in [the Supreme] Court, or discussion of the matter in the Court of Appeals." *Id.* In fact, the Supreme Court acknowledged that "the statutory scheme and the Veterans' Administration regulations may dictate a contrary result" and reiterated that "[t]he point was not argued in the case as it came to [the Supreme Court] from the Court of Appeals." *Id.* at 54.

This Court adopts the reasoning of the *Malmberg* Court and holds that federal law does not preclude Plaintiffs from seeking future medical expenses. "We recognize, as other courts have, that there is some risk of a double recovery to the extent [Mr. Egan] elects to continue receiving services from the VA, but any such concern is for Congress and not this Court." *Malmberg*, 816 F.3d at 195. Further, the Court does not find the dicta in *Brooks* to be controlling, and the Court notes that in a more recent case, "the Supreme Court decided, at least implicitly, that nothing under the FTCA or other provision[s] of federal law prohibited the government from paying twice for future medical expenses." *Molzof v. United States*, 6 F.3d 461, 464 (7th Cir. 1993) (citing *Molzof v.*

5

*United States*, 502 U.S. 301, 310 (1992)).  "Whether such an award is permissible, the [Supreme] Court indicated, was a matter of state law."  *Id.*; *see also Malmberg*, 816 F.3d at 193 ("Damages in FTCA actions are determined by the law of the state in which the tort occurred, so even if federal law does not require an offset we must next consider whether such an offset is warranted under state law.").

South Carolina law recognizes the common-law collateral source rule, which provides "'that compensation received by an injured part from a source wholly independent of the wrongdoer will not reduce the damages owed by the wrongdoer.'" *Covington v. George*, 597 S.E.2d 142, 144 (S.C. 2004) (quoting *Citizens and S. Nat'l Bank of S.C. v. Gregory*, 463 S.E.2d 317, 318 (1995)).  This long-established rule recognizes that "[a] tortfeasor cannot 'take advantage of a contract between an injured party and a third person, no matter whether the source of the funds received is an insurance company, an employer, a family member, or other source.'" *Id.* (quoting *Pustaver v. Gooden*, 566 S.E.2d 199, 201 (S.C. Ct. App. 2002)) (internal quotation marks omitted).  Defendant contends that compensation in the form of future VA care is not "wholly independent" of the wrongdoer, and asks the Court to find that the collateral source rule does not bar evidence of the availability of free, future care.  Defendant's argument is flawed for two reasons.

First, the collateral source rule speaks in terms of *compensation* received by an injured party.  The question here is whether Plaintiffs' damages can be reduced because of *services* that may be received in the future.  If Mr. Egan seeks medical care from a non-VA provider, the costs of that care are unaffected by the availability of free VA services.  *See Malmberg*, 816 F.3d at 194 (analyzing New York's codification of the

6

collateral source rule and holding that "the costs of [plaintiff's] medical care cannot be regarded as replaced or indemnified merely because the plaintiff elected not to accept the opportunity to receive free medical care from the VA").  Second, it is speculative to suggest that Mr. Egan will avail himself of the VA care in the future.  It would be reasonable for him to avoid receiving care at the institution that he alleged caused him such great suffering.  Thus, the Court cannot conclude that Mr. Egan is reasonably certain to receive any benefits from the VA in the future.

Perhaps recognizing the weight of authority does not support its position on Plaintifs' future medical expenses,[2] Defendant offers two fallback positions.  First, Defendant asks the Court to require Mr. Egan to receive his durable medical equipment from the VA.  This argument has been made and rejected by other courts.  *See Aguchak v. United States*, No. 3:15-cv-0105-HRH, 2017 WL 5194096, at *1 (D. Alaska Feb. 28, 2017) ("There is no distinction in the law between medical treatment and medicines or devices; and a pill is not necessarily a pill.  There are very expensive branded pills and far less costly generic pills.  They don't always do the same job.  The same is true of medical devices.")  Defendant also relies on the district court's decision in *Malmberg v. United States*[3]—a decision that was reversed by the United States Court of Appeals for the Second Circuit.  *See Malmberg*, 816 F.3d at 195 ("[W]e find that the district court improperly offset [plaintiff's] damages award to the extent that it offset for future medical services *and supplies* that could be provided by the VA for free . . . ." (emphasis added)).

---

[2] Defendant is free, of course, to contest the reasonableness of Plaintiffs' future damages at trial.

[3] *Malmberg v. United States*, No. 5:06-cv-1042, 2014 WL 4184737 (N.D.N.Y. Aug. 21, 2014), *rev'd by* 816 F.3d 185 (2d Cir. 2016).

7

Finally, Defendant asks this Court to establish a reversionary trust from which Plaintiffs can withdraw money as needed to obtain non-VA services. Defendant offers no authority to support such a position, and the Court declines to impose such a limitation on Mr. Egan's ability to receive future medical care.

## **CONCLUSION**

For these reasons, Plaintiffs' Motion in Limine, ECF No. 68, is **GRANTED**.

IT IS SO ORDERED.

                                          s/Donald C. Coggins, Jr.
                                          United States District Judge

April 25, 2018
Spartanburg, South Carolina